Good morning, Your Honors. My name is Michael Donahoe. I'm from the Federal Defender's Office in Helena. I'm here on behalf of Mr. Gerald Littlehead, who is a client of our office. I was not trial counsel in this case, but have reviewed the record and am prepared to make an argument that I hope will assist the Court today. There are two claims in this case. The first is, is that acquittal should have been entered on both counts. I didn't understand that one. It looked to me as though it's a bar fight, there's a defense of a third person defense, jury could have bought it. They sort of semi-did. They went from second degree down to manslaughter, but they didn't buy it entirely. And the fact that Littlehead had a knife and the others are fighting with fists and boots seems like it's probably enough for him, plus the number of stab wounds. Why isn't that enough under Jackson? It's not enough, Your Honor, and I really would like to focus here in the little bit of time I have on what I think is an important issue in this case, and that would be the two cases cited in the 28J letter lodged on September 7th. That would be Quintero and Alexander. Quintero is a decision of this Court, Alexander is a decision of the D.C. Court, upon which Quintero relies pretty heavily. In the prototypical case of this nature, as I understand these cases, when the murder charge is brought either first or second degree, the defense argues as a matter of defense that the heat of passion is in play, and that negates the theory being, that negates the intent element, and it reduces the case to voluntary manslaughter. Since heat of passion, I thought it was defense of a third person, a brain-damaged brother. But I want to stay with this, Your Honor. I understand that we have the justification issue that maybe I'll get to, but this would be my more central point. The prototypical cases is that it's a lesser included instruction and that the burden falls on the defense to present this evidence, and then ultimately the government has the burden to disprove either that the provocation happened at all or that the provocation was inadequate. That's where they come from. Now, in this case, this didn't happen. In this case, it was indicted in the style of second degree murder and voluntary manslaughter. So from the inception of the case, at the close of the government's case, we had conflicting theories that the government was arguing, for which they were responsible in proving beyond a reasonable doubt. So our essential contention here is, is that this case needed to get resolved, Rule 29-wise, at the close of the government's case. Why are they conflicting? It looks like they're not conflicting. One just has the additional element of an intent to kill. No, Your Honor. Actually, I think Quintero categorically states that voluntary manslaughter is a subset of elements of the second degree murder charge, and actually what you wind up having is a negation of the intent element. So my theory here is you and I just said the same thing, subset of the elements. But I think that what is being missed here, in terms of a legal nicety that is really, really important in this case, is if we're using the rational jury standard, any jury could they determine this, and they can, because you need a legal mind to determine this. If the government comes with conflicting theories, voluntary manslaughter on the one hand, second degree murder on the other hand, there's no way that any rational jury could sort that out. Now, if you take the premise that the government assumed these proof burdens, apparently in the prototypical case they don't. They don't do that. They wait for the defense to raise the heat of passion or provocation, and then there's a shifting to the government if there's sufficient evidence of heat of passion or provocation. Tell us exactly what Quintero holds that makes what happened here inappropriate. What makes Quintero holds that voluntary manslaughter is a subset of elements, and it's essentially in terms of proof and charge, it's a contradiction of the second degree murder charge. That's what it holds. And in that case It's only that there's a difference of opinion as to what the intent was, isn't that right? No, Your Honor, that's not right. I think that what we're missing here is the procedural point that in Quintero the defendant was charged with first degree murder. The trial judge ruled 29, the first degree murder charge, and instructed on the lessors of second degree murder and voluntary manslaughter. And then there was a division of opinion as to which charge would be good, and the jury decided to convict on the voluntary manslaughter. That is not these facts. These facts, and Quintero makes the point that it's because the government doesn't have the burden to prove the heat of passion. That's the point it makes. And that's the distinction I want to draw into this discussion here, is that that's not what's happening here. Here the government assumed that proof burden. And if they did that, they were responsible for it. If their main contention, and categorically it was at this trial, that he, the defendant, committed second degree murder, by definition he did not commit voluntary manslaughter, by definition, because he had the intent to kill. I'm having trouble with that argument for the same reason Judge Kleinfeld stated. But it seems to me that the second degree murder has the same elements of the manslaughter, except it has an added element of intent. And why can't the jury just have rejected the intent element, but a rational jury could have found the other elements present? They can't because the government assumed the burden of proof. Your Honor, respectfully, you can't wrench the case from the context in which it was tried. You didn't challenge the jury instructions, as I recall. Is that right? No, Your Honor, but we didn't have to. The instructions were okay? Well, I have – As far as we're concerned. There's no instruction issue in the case as I see it. So we should assume that the jury was properly instructed on what the government had to prove for second degree murder and what the government had to prove for voluntary manslaughter. But in light of the government's admission that the second degree murder case was good, was good, the only reasonable conclusion – I don't know if that's an admission. That's a claim. Well, no, it's an admission in the context of them assuming the proof burden. You know, counsel, usually we hear a complaint that they refuse to give the lesser included offense instruction so that you're trying to persuade us of the exact opposite. I don't know if it's the exact opposite, Your Honor, and maybe tradition speaks a little louder here. The government – maybe the tradition is that the government waits for the heat of passion to come by way of defense evidence. They preempted that here. I have really no opinion on that. The fact of the matter is, is that in the case, that's what the government did. They assumed that proof burden. And if they assumed it, they needed to prove it. The second degree murder conviction by definition and argument by the government that he committed second degree murder, ipso facto means that there's no voluntary manslaughter. Well, what is your – the Quintero case you're saying involved, you know, a different set of charges. Correct. So what is your best precedent that you can assert that supports your theory that here a rational jury, given the charges made, couldn't convict on manslaughter? My best precedent would be this Court's recognition of Alexander, which is the D.C. Circuit case that's cited in Quintero, and a careful reading of that case, a very careful reading. No rational jury could come to the conclusion that this man committed voluntary manslaughter in light of the proof and in light of the government's argument that he committed second degree murder. Counsel, I would be interested in your turning to the sentencing issue. Was there adequate notice of the departure? There was not, Your Honor. Thank you for bringing that to my attention, since I'm running out of time. We respectfully contend that there was an adequate notice and that in the end, although it may be appropriate to consider acquitted conduct in sentencing someone, this sentence is totally unreasonable. There was no notice. There was provocation on the part of the victim, however distasteful that might have been. The man was acting in defense of a brother who had – who was frail, who had a mental condition, who was told, this little brother, that if he had been hit in the head again, it could kill him. The brother was understandably protective, maybe overprotective. And maybe he acted in an irrational way. This is not a case that justified an upward departure from 108 months. Now, on the subject of notice, in the pre-sentence report, there's a statement that there could be an escalation for this reason or that reason. Is that adequate notice? No, Your Honor. Respectfully, we contend that it wasn't. You have authority for that? Your Honor, I think the Burns decision, I mean, we go back, I guess, to guideline type cases. That's where we land. I did look to see if there was anything recent in terms of notice since Booker. I really am not seeing it. Thank you. Unless the Court has other questions. Thank you, Your Honor. Well, I have one question, and that is, this case involves an above guidelines sentence. Yes, Your Honor. I think the Supreme Court, what they have on their docket now, like a sentencing case involving a below guideline sentence. Yes, Your Honor, they do. So my question is, should our decision on the sentence, if we get to that, if we don't buy your manslaughter argument, should that be held until the Supreme Court says whatever it? I would think that that would be a prudent thing to do, Your Honor, yes. Thank you, counsel. Although you've gone through all your time, you may want to pay attention anyway, because we may invite you to give 30 seconds or so of rebuttal. Thank you. Good morning. My name is Joe Thagard. I'm an assistant United States attorney from Great Falls, Montana, and I was trial counsel in this case as well. Turning to the issue of the sufficiency of the evidence, I think that Quintero is very clear that heat of passion or sudden quarrel is simply a subset of the intent element. The government was entitled to charge this. Certainly, while this may be a little bit unique procedurally that the government charged this. Could you help me on something else? I'm sure we'll invite you to come back. Certainly, Your Honor. I'm having some trouble on the notice regarding a possible upward departure. I used to get a lot of pre-sentence reports when I was a district judge, and what they did is they gave me my ammunition, what the law was and what the facts were. If I wanted to upwardly depart, downwardly depart, impose an adjustment, not impose an adjustment, whatever ammo there was that would support exercises of judgment in one direction or another. It was all there, the citations to the guidelines, whole deal. I always read them that way. And when I looked at this pre-sentence report, it looked just the same. It had ammunition for an upward departure. It had ammunition for a downward departure. Whatever the judge wanted to do, it gave him direction into the relevant facts and sentencing guideline citations so that he could figure out how to approach it. I thought notice required something more. It required the judge saying during sentencing, or I guess it's conceivable they do it in a memo prior to the sentencing, I'm thinking of departing upward because of such and such or to such and such. The counsel or the defendant wished to be heard on that, and there wasn't anything like that. And that's correct. There wasn't anything like that. Why don't we have to vacate the sentence and remand it? Because there wasn't anything like that. Well, Judge, I think in this instance, given the fact that the PSR is essentially prepared by an arm of the court, the United States Probation Office, I think in this instance that really did put. You understood my question about the PSR, I suppose. I'm sorry. You understood my question about the PSR. Absolutely, Your Honor, that it didn't come directly from the judge rather than. No, no, that was not. The point was the pre-sentence report does not give notice that the court may depart upward. It gives staff information to the judge showing him how he could depart upward, how he could depart downward. And admittedly, Your Honor, in this case it's basically a one-liner. I think with respect to the 3553A factors, it basically said that the court could consider the severity of the offense. I do think that in light of Booker, however, we have to recognize that Booker does really broaden the horizon. What does Booker have to do with the notice? Well, I think that Booker. The question isn't whether the facts justified departure. It's whether notice was given so the parties could speak to departure. Yes, and what I'm saying, Your Honor, is that in this case, given the fact that under 3553A that there is this sort of broad horizon that the PSR's reference to the severity of the offense being something that can be considered in the context of the 3553A factors gave sufficient notice. Do you have any authority for your position? You know, Your Honor, none beyond that cited in the briefs. And also in this case, the judge didn't seem to go through the 3553A factors. He just said, I know they exist. Well, he talked about some of them. He did make a reference to them, Your Honor, and he did talk about the circumstances of the offense. He did talk about the defendant's history, in particular his history of violence and, as I say, the circumstances of the offense. And I think that the Court certainly made it clear that it was aware of those factors. He stated that he considered them, and I think that that's sufficient. Is there a precedent, Evans-Martinez, in our circuit that says 32H still applies after Booker? Yes. Yes, there is, Your Honor. Okay. So we have to follow that, right? Absolutely, Your Honor. So what's the compliance with 32H here? As I say, the compliance is in the pre-sentence report itself in Part F. The pre-sentence report gives grounds by which the Court could give a more severe sentence. I believe it does. I think that simply in referring to those 3553 factors and in particular the severity of the offense, which I think goes to the circumstances of the offense, that it gives sufficient notice. The report says factors that may warrant departure, and then Paragraph 154 says this information is not necessarily a recommendation but is included as notice to the parties that this may be an issue. And then Paragraphs 155 and 6 are about potential downward departure. Paragraph 157 says due to the severity of the offense, the Court may consider the 3553 factors in approving a reasonable sentence. So if we were to publish on this, we'd be saying that's enough to give notice of possible upward departure. Yes. Yes, Your Honor, if you were to publish on it. And there would not be a case that said it was adequate. That's correct, Your Honor. So this would be the first one that says that sort of thing is adequate. You would be cutting some new ground, Your Honor. And the rule says the Court must give notice. So we would be saying that when a PSR gives notice, that that's the Court giving notice. Yes, Your Honor. Is there any precedent, existing precedent, that supports that, that a PSR giving notice is equivalent to the Court giving notice pursuant to Rule 32H? You know, Your Honor, I'm not aware of anything beyond what we've cited in the brief. What was it in the brief again? Basically what we cited to in the brief, Your Honor, is we simply cited to the rule. And I think it's in a fairly passive language that departure can't be, Rule 32, I think it's H, can't be done without sufficient notice. The whole idea of departure after Booker is somewhat, in theory, questionable, whether it is a departure or just an exercise of discretion. I take it that Evans-Martinez decided that, right? Absolutely, Your Honor. I think Evans-Martinez makes it clear that there has to be notice. Okay. Apart from the notice issue, just on the reasonableness of the sentence, would you think we would be advised to hold the case for the Supreme Court's decision? In the case they have, if we get past the sufficiency of evidence in the notice. I do agree with Mr. Donahoe that I think judicial economy would be served by waiting for that decision. Well, we could send it back and say to the district court, you're going to have to re-sentence because you didn't have adequate notice, but we suggest that you may wish to make it hold to the district court as well as we hold it. Isn't that right? That is true, Your Honor. I do agree that I think the departure issue. Clean us up. I was thinking the same thing. By the time all the paperwork is done and everybody is there in court for the re-sentencing, the Supreme Court will probably have issued its opinion on that. I would think so, probably by June of next year, Your Honor. They might even figure there are a lot of us waiting for it and get it done sooner. That's very possible, Your Honor. Your Honors, unless the court has any other questions, I'll go ahead and sit down. Thank you. Thank you, counsel. Go ahead and take the 30 seconds, even though your time is up. I appreciate that very much, Your Honors. I just, I know I probably sound like a broken record here, but I just don't want to give up on that sufficiency claim. I would beg the court to please take a careful look at Quintero and Alexander in consideration of the fact in the manner in which the case was charged and tried. Certainly the government's theory was that there was a second-degree murder here, and I think it was respectfully Judge Haddon's obligation to reconcile those conflicting arguments in the Rule 29 context. Any rational jury wouldn't be able to do that. Thank you, Your Honors. Thank you, counsel. U.S. v. Littlehead is submitted.
judges: Fletcher, Kleinfeld, Gould